**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**
~~IN THE CIRCUIT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY~~

| | | |
|---|---|---|
| HENRY JAMES CLARKS | * | |
| 7 MATTAWOMAN WAY | * | |
| ACCOKEEK, MD 20607 | * | |
| | * | |
| _____ Plaintiff~s~ | * | |
| | * | |
| v. | * | Case No.: 8:19-1014-GJH |
| | * | |
| REI NETWORK, LP, | * | |
| D/B/A MYHOUSEDEALS.COM, | * | |
| D/B/A PRIVATE MONEY GOLDMINE | * | |
| 1929 HAWTHORNE STREET | * | |
| HOUSTON, TX 77098 | * | |
| _____ SERVE UPON: JOHN DOUGLAS SMITH | * | |
| _____ 1927 HAWTHORNE STREET | * | |
| _____ HOUSTON, TX 77098 | * | |
| _____ AND | * | |
| FM 41, INC., D/B/A REI NETWORK, | * | |
| D/B/A MYHOUSEDEALS.COM, | * | |
| D/B/A PRIVATE MONEY GOLDMINE | * | |
| 1927 HAWTHORNE STREET | * | |
| HOUSTON, TX 770098 | * | |
| _____ SERVE UPON: JOHN DOUGLAS SMITH | * | |
| _____ 1927 HAWTHORNE STREET | * | |
| _____ HOUSTON, TX 77098 | * | |
| _____ AND | * | |
| JOHN DOUGLAS SMITH ALSO KNOWN AS | * | |
| JOHN SMITH, ALSO KNOWN AS DOUG SMITH | | |
| 1927 HAWTHORNE STREET | * | |
| HOUSTON, TX 770098 | * | |
| _____ AND | * | |
| ORGANIZATION 1 – GUARANTEED BANK LOANS | | |
| D/B/A LOAN MARKET ASSOCIATION | * | |
| C/O NICK HOFFMAN | * | |
| ADDRESS LINE 1 | * | |
| ADDRESS LINE 1 | * | |
| _____ AND | * | |
| ORGANIZATION 2 – LARRY SCOTT LOAN COMPANY | | |
| C/O LARRY SCOTT | * | |
| ADDRESS LINE 1 | * | |
| ADDRESS LINE 2 | * | |

                    AND                                 *

ORGANIZATION 3 – WEST END FINANCE COMPANY

C/O JAMES MANAGER ABUBUKAR      *

ADDRESS LINE 1                      *

ADDRESS LINE 2                      *

                    AND                                 *

ORGANIZATION 4 – STREAMLINE LOANS    *

C/O LARRY PHILLIPS                  *

ADDRESS LINE 1                      *

ADDRESS LINE 2                      *

                    AND                                 *

ORGANIZATION 5 – KINGDOM FINANCIAL SERVICES NIGERIA

C/O JACOB NWABUZOR HASSAN       *

ADDRESS LINE 1                      *

ADDRESS LINE 2                      *

                    AND                               *

ORGANIZATION 6 – GLENN GROUPS LOANS *

C/O PAUL OMOKINIOVO               *

C/O GLENN A. BAKER                *

ADDRESS LINE 1                      *

ADDRESS LINE 1                      *

                    AND                               *

ORGANIZATION 7 – LONMOND FINANCE COMPANY

C/O RICHMOND CHESTER            *

ADDRESS LINE 1                      *

ADDRESS LINE 1                      *

                  *Defendants*            *

~~PRIVATE MONEY GOLDMINE~~        ~~*~~

~~ALSO KNOWN AS MYHOUSEDEALS.COM~~

~~1302 WAUGH DRIVE, SUITE 762~~    ~~*~~

~~HOUSTON, TX 77019-3908~~

~~SERVE UPON: JOHN DOUGLAS SMITH~~ ~~*~~

~~AND~~    ~~*~~

~~REI NETWORK, LP~~    ~~*~~

~~ALSO KNOWN AS MYHOUSEDEALS.COM~~

~~ALSO KNOWN AS PRIVATE MONEY GOLDMINE~~

~~1929 HAWTHORNE STREET~~    ~~*~~

~~HOUSTON, TX 77098~~

~~SERVE UPON: JOHN DOUGLAS SMITH~~ ~~*~~

~~AND~~    ~~*~~

~~FM41, INC, ALSO KNOWN AS REI NETWORK~~ ~~*~~

~~ALSO KNOWN AS MYHOUSEDEALS.COM~~



~~ALSO KNOWN AS PRIVATE MONEY GOLDMINE~~
~~1927 HAWTHORNE STREET~~                          *
~~HOUSTON, TX 770098~~
~~SERVE UPON: JOHN DOUGLAS SMITH~~ *

~~AND~~                                                          *

~~JOHN DOUGLAS SMITH ALSO KNOWN AS~~    *
~~JOHN SMITH, ALSO KNOWN AS DOUG SMITH~~
~~1927 HAWTHORNE STREET~~                          *
~~HOUSTON, TX 770098~~
                                                                       *
~~Defendants~~

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

### **AMENDED COMPLAINT**

COMES NOW, Plaintiff, Henry Clarks ("Mr. Clarks"), Plaintiff herein, by and through his undersigned counsel Anupa Mukhopadhyay, Esquire ("Counsel"), pursuant to Federal Rule of Civil Procedure 15(a) – Amended and Supplemental Pleadings, Federal Rule of Civil Procedure 19(a) – Required Joinder of Parties, and United States District Court for the District of Maryland Rule 103(6) – Amendment of Pleadings, and files this Amended Complaint against the above named Defendants, and states as follows:

### **INTRODUCTION**

1.      Plaintiff Mr. Clarks purchased access to a subscription service that provided its subscribers information related to alleged private money lenders, real estate loan brokers, and real estate loan investors who represented that they were interested in providing financial lending services in the form of private money loans to prospective borrowers for real estate investments.

2.      The subscription service agreement is a contract between Plaintiff Mr. Clarks and Defendants.

3.      Contrary to Plaintiff Mr. Clarks' intended use, Defendants' subscription service

provided internet original content, information, and connected Plaintiff Mr. Clarks with conmen and fraudulent criminals who were in actuality the owners, managers, and agents of Defendants, rather than private money lenders, real estate loan brokers, or real estate loan investors, and, as a result, Plaintiff Mr. Clarks experienced financial losses culminating to an amount of approximately $900,000.00.

## PARTIES

4.     Plaintiff Mr. Clarks is, and at all times mentioned herein was, an individual natural person who resides in Prince George's County, State of Maryland.

5.     Defendant REI Network LP (hereinafter "REI"), d/b/a myhousedeals.com, d/b/a Private Money Goldmine, is, and at all times mentioned herein was, a purported legal entity with principal place of business in the State of Texas and purportedly, routinely engages and operates a business of selling a proprietary listing of private money lenders, real estate loan brokers, and real estate loan investors to prospective borrowers throughout the United States.

6.     Defendant FM 41, Inc. (hereinafter "FM"), d/b/a REI Network, d/b/a myhousedeals.com, d/b/a Private Money Goldmine, is, and at all times mentioned herein was, a purported legal entity with principal place of business in the State of Texas and purportedly, routinely engages and operates a business of selling proprietary listing of private money lenders, real estate loan brokers, and real estate loan investors to prospective borrowers throughout the United States.

7.     Defendant John Douglas Smith (hereinafter "Mr. Smith"), also known as John Smith, also known as Doug Smith, is, and at all times mentioned herein was, a natural person residing in the State of Texas, but routinely engages in business practices in the State of Maryland, and represents himself in the State of Maryland as furthering his purported business of selling

4

proprietary listing of private money lenders, real estate loan brokers, and real estate loan investors.

8.      Organization 1 – Guaranteed Bank Loans, d/b/a Loan Market Association (hereinafter "Organization 1") is an organization that holds itself out as practicing the business of providing financial loans.  Organization 1 is a fictitious legal entity operated by Defendants FM, REI, and Mr. Smith (collectively the "Website Defendants") and their agents as a collective in furtherance of their scheme to defraud willing prospective borrowers of money.

9.      Organization 2 – Larry Scott Loan Company (hereinafter "Organization 2") is an organization that holds itself out as practicing the business of providing financial loans. Organization 2 is a fictitious legal entity operated by the Website Defendants and their agents as a collective in furtherance of their scheme to defraud willing prospective borrowers of money.

10.      Organization 3 – West End Finance Company (hereinafter "Organization 3") is an organization that holds itself out as practicing the business of providing financial loans. Organization 2 is a fictitious legal entity operated by the Website Defendants and their agents as a collective in furtherance of their scheme to defraud willing prospective borrowers of money.

11.      Organization 4 – Streamline Loans (hereinafter "Organization 4") is an organization that holds itself out as practicing the business of providing financial loans. Organization 2 is a fictitious legal entity operated by the Website Defendants and their agents as a collective in furtherance of their scheme to defraud willing prospective borrowers of money.

12.      Organization 5 – Kingdom Financial Services Nigeria (hereinafter "Organization 5") is an organization that holds itself out as practicing the business of providing financial loans. Organization 2 is a fictitious legal entity operated by the Website Defendants and their agents as a collective in furtherance of their scheme to defraud willing prospective borrowers of money.

13.      Organization 6 – Glenn Groups Loans (hereinafter "Organization 6") is an

organization that holds itself out as practicing the business of providing financial loans. Organization 2 is a fictitious legal entity operated by the Website Defendants and their agents as a collective in furtherance of their scheme to defraud willing prospective borrowers of money.

14.     Organization 7 – Lonmond Finance Company (hereinafter "Organization 7") is an organization that holds itself out as practicing the business of providing financial loans. Organization 2 is a fictitious legal entity operated by the Website Defendants and their agents as a collective in furtherance of their scheme to defraud willing prospective borrowers of money.

15.     All Defendants in this action are collectively referred to herein as "Defendants," unless specifically identified.

## JURISDICTION AND VENUE

16.     It is undisputed that this Honorable Court is the proper jurisdiction for the respective parties to resolve their meritorious dispute.

17.     Defendant REI holds itself out as a legitimate proprietary listing provider of private money lenders, real estate loan brokers, and real estate loan investors in the State of Maryland.

18.     Defendant FM holds itself out as a legitimate proprietary listing provider of private money lenders, real estate loan brokers, and real estate loan investors in the State of Maryland.

19.     The agreements upon which this action is based were made and were to be performed in the State of Maryland.

20.     The Website Defendants advertised, encouraged, and induced Plaintiff Mr. Clarks to pay monies for its purported subscription service and to engage purported lenders listed on the subscription service to enter into private loan transactions to fund real estate development opportunities, all through telephone and email communication.

21.     Defendant Organizations 1 through 7 (collectively the "Contract Defendants")

unrightfully and unlawfully induced Plaintiff Mr. Clarks to pay monies unto them for purported origination and transaction fees for purported private loan transactions to fund real estate development opportunities.

22.     The Circuit Court for Prince George's County, Maryland had jurisdiction over all Defendants, as all Defendants in this action conducted business activities, including purporting to perform loan transactions with Plaintiff Mr. Clarks, thereby availing themselves to the laws of the State of Maryland.

23.     It is undisputed that the venue for this meritorious dispute is accurate.

24.     That this action was properly removed to the United States District Court for the District of Maryland for resolution of Plaintiff Mr. Clarks' claims and Defendants' oppositions thereto.

## FACTS

25.     Plaintiff Mr. Clarks was induced to pay monies unto the Contract Defendants pursuant to the proprietary listing (the "Listing") and advice associated therewith, provided by the Website Defendants.  Defendants drafted, supplied, and provided written content on their website, privatemoneygoldmine.com (the "Website"), that was designed to induce and persuade a reasonable person to purchase its subscription.

26.     FM is a general partner of REI, which operates the website the Website within which access to the Listing can be purchased.

27.     Defendant Mr. Smith is the President of FM.

28.     Upon information and belief, Defendant Mr. Smith purposefully and intentionally created this business structure in an effort to shield himself from liability for the fraudulent scheme that he planned, orchestrated, and carried out in association with the Contract Defendants as a

collective through the Website and the Listing.

29.　　The Website's purported purpose is to provide and advertise the Listing, which allegedly connects prospective private money borrowers and lenders, and to provide advice, instructions, tips, and directions to be used in association with the Listing.

30.　　Plaintiff Mr. Clarks communicated with Defendant Mr. Smith regarding the Listing as early as July of 2013 via the "contact us" page on the Website.  Plaintiff Mr. Clarks was at the time seeking information and advice on how to enter the private money lending market for the purpose of real estate investments.  Plaintiff Mr. Clarks had no commercial experience in buying and selling real estate prior to the occurrence of the actions that are the subject matter of this litigation.

31.　　The "What You Get" advertisement associated with the Listing indicates that purchasing access to the Listing includes a thirty-minute one-on-one phone consultation with an alleged private money expert, a "credibility kit" that is intended for establishing instant credibility for the purpose of obtaining monies, and email and phone scripts that make contacting lenders easy.  A copy of said "What You Get" advertisement is Defendants' Exhibit 4 in Defendant's Memorandum in Support of Defendant's Motion to Dismiss or for Summary Judgment.  A copy of said "What You Get" advertisement extracted from Defendants' Memorandum is reproduced herewith and is incorporated by reference and attached hereto as **Exhibit A**.

32.　　Despite claiming that they do not vet, verify, or perform due diligence on the information represented in the Listing, the Website Defendants stamp that they are confident in the quality of their Listing and provide advice and guidelines for the best ways to induce lending of money from purported lenders listed on the Listing.  See Ex. A at 1.

33.　　The "credibility kit" and email and phone scripts are content that is the product of

and was created by the Website Defendants and Defendant Mr. Smith, and comes with the purchase of access to the Listing.  See Ex. A at 1.

34.     Also included with the purchase of access to the Listing is specific advice as to how to obtain monies from persons on the list.  The Website includes a "Tips" section in which it advises the Listing's subscribers on the best ways in which to obtain monies from those persons associated with the Listing.  A copy of said "Tips" section is Defendants' Exhibit 3 in Defendant's Memorandum in Support of Defendant's Motion to Dismiss or for Summary Judgment.  A copy of said "Tips" section extracted from Defendants' Memorandum is reproduced herewith and is incorporated by reference and attached hereto as **Exhibit B**.  Included in the "Tips" section is advice to call persons associated with the Listing as opposed to emailing them.  See Ex. B at 1.

35.     The Listing in reality provides information that is adopted by and in part created by the Website Defendants, connecting prospective borrowers to conmen and fraudulent criminals (who are in fact Defendants' agents, managers, or employees), rather than private money lenders, real estate loan brokers, or real estate loan investors.

36.     Plaintiff Mr. Clarks, in 2013, paid monies unto the Website Defendants in exchange for access to the Listing.  Plaintiff Mr. Clarks indicated on the Website that he was searching for a private money loan in the amount of roughly $20 million to $25 million for multi-family real estate projects in the Accokeek, Maryland, area.

37.     After analyzing Defendants' original content contained in the Listing, published on the Website, and obtained by Plaintiff Mr. Clarks from Defendant Mr. Smith directly, Plaintiff Mr. Clarks paid monies unto the Contract Defendants for the consideration of substantial private money loans after interfacing with them and roughly 18 other persons or entities represented in the Listing as private money lenders, real estate loan brokers, or real estate loan investors.

38.     As a result of paying monies unto the Contract Defendants and not receiving any of the promised consideration in return, Plaintiff Mr. Clarks has suffered financial losses amounting to approximately $900,000.00, which can be attributed as follows:

a.     Plaintiff Mr. Clarks paid monies unto Defendant Organization 1 in the amount of $12,457.00 as purported origination and administrative fees in order to obtain a $2 million private money loan, to be repaid over a five-year period.

b.     Plaintiff Mr. Clarks paid monies unto Defendant Organization 2 in the amount of $9,866.50 as purported origination and administrative fees in order to obtain a $10 million private money loan, to be repaid over 15 years at an interest rate of 3% per annum.

c.     Plaintiff Mr. Clarks paid monies unto Defendant Organization 3 in the amount of $32,500.00 as purported origination and administrative fees in order to obtain a $10 million private money loan, to be repaid over 30 years at an interest rate of 3% per annum.

d.     Plaintiff Mr. Clarks paid monies unto Defendant Organization 4 in the amount of $104,220.00 as purported origination and administrative fees in order to obtain a $2.5 million private money loan, to be repaid over 20 years at an interest rate of 4% per annum.

e.     Plaintiff Mr. Clarks paid monies unto Defendant Organization 5 in the amount of $107,081.91 as purported origination and administrative fees in order to obtain a $15 million private money loan, to be repaid over 35 years at an interest rate of 2% per annum.

    f.    Plaintiff Mr. Clarks paid monies unto Defendant Organization 6 in the amount of $184,491.01 as purported origination and administrative fees in order to obtain a $7 million private money loan, to be repaid over 10 years at an interest rate of 4% per annum.

    g.    Plaintiff Mr. Clarks paid monies unto Defendant Organization 7 in the amount of $438,930.00 as purported origination and administrative fees in an effort to obtain a $25 million private money loan, to be repaid over 25 years at an interest rate of 6% per annum.

39.    For all of the aforementioned contemplated private loans for which Plaintiff Mr. Clarks paid purported origination and administrative fees, Plaintiff Mr. Clarks received no loan monies in return from the Contract Defendants, the purported lenders.

40.    The Contract Defendants exercised the same tactics and strategy in their efforts to induce Plaintiff Mr. Clarks to pay monies unto them for intentionally fraudulent promises of private loan monies in return. They intentionally induced monies from Plaintiff Mr. Clarks throughout the time period of the year 2013 through the end of the year 2016.

41.    The Contract Defendants began their scheme with a brief introduction that expressed excitement at the opportunity to conduct business with Plaintiff Mr. Clarks in Accokeek, Maryland, despite being from locales scattered across the globe. At the same time the Contract Defendants ensured Plaintiff Mr. Clarks that they had funding available in the amount that he was at the time requesting, and asked him for personal information.

42.    After receiving a response from Plaintiff Mr. Clarks, the Contract Defendants assured him that he was qualified to obtain whatever amount of private loan monies that he requested, but informed him that there would be a preliminary fee associated with transferring

Plaintiff Mr. Clarks' requested private loan monies.  Said preliminary fees were purported to be origination and administrative fees.

43.     The Website's terms of service strictly forbid preliminary payments to lenders, and dictate that any prospective borrower such as Plaintiff Mr. Clarks who receives such a preliminary payment request should notify the Website so that the prospective lender who requested a preliminary payment can be removed from the Listing.

44.     The Contract Defendants represented that the preliminary fees were origination and administrative fees.  To induce Plaintiff Mr. Clarks to pay the purported fees, the Contract Defendants repeatedly represented to Plaintiff Mr. Clarks and assured Plaintiff Mr. Clarks that he would receive the stipulated loan monies shortly after paying whatever amount of monies was requested from him unto the Contract Defendants.

45.     With the promised consideration of anywhere from $2 million to $25 million in return, Plaintiff Mr. Clarks promptly (but hesitantly) satisfied all allegedly required preliminary payments, purported origination and administrative fees, that were asked of him to be satisfied in order that the purported private loan monies could be transferred from the Contract Defendants to the Plaintiff Mr. Clarks.

46.     After receiving the first preliminary payment from Plaintiff Mr. Clarks, the Contract Defendants would then formulate other reasons for new but allegedly required preliminary payments, purported origination and administrative fees, in order that the agreed upon amounts of purported loan monies could be transferred unto Plaintiff Mr. Clarks.

47.     Having already paid a considerable preliminary payment to each of the Contract Defendants Plaintiff Mr. Clarks was induced to continue tendering further preliminary payments, purported origination and administrative fees, to the Contract Defendants in furtherance an effort

to obtain the consideration that they promised in return in the form of loan monies.

48.     The Contract Defendants continued this cycle until Plaintiff Mr. Clarks represented that he was no longer able or willing to tender any more preliminary payments unto the Contract Defendants.  At that point, an agent who was communicating with Plaintiff Mr. Clarks on behalf of the Contract Defendants would disappear, vanish, or cease to communicate in any way, shape, or form with Plaintiff Mr. Clarks.

49.     Despite tendering preliminary payments of monies amounting to $900,000.00, Plaintiff Mr. Clarks never received any of the loan monies that were agreed upon from any of the Contract Defendants.

50.     The Contract Defendants induced Plaintiff Mr. Clarks to pay monies unto them from time to time during the time period of January, 2013, through September, 2016.

51.     Plaintiff Mr. Clarks therefore paid monies unto the Contract Defendants in the amount of $889,546.42 in exchange for what was agreed to be $71.5 million worth of private money loans for the purpose of investing in multi-family real estate in Accokeek, Maryland, but received $0.00 worth of private money loans from the Contract Defendants.

52.     Plaintiff Mr. Clarks suffered additional legal and administrative financial losses up to the date of this Amended Complaint's filing in the amount of at least $12,211.00 in an effort to investigate and resolve this matter.

53.     The Contract Defendants purposefully failed to perform their duties under the agreements to which Plaintiff Mr. Clarks paid monies unto them in order to receive the consideration of private money loans.

54.     Upon information and belief, the Contract Defendants purposefully and intentionally failed to perform their aforementioned duties as part of an intentional and fraudulent

scheme that operates through the Website and the Listing.

55.     Upon information and belief, the intentional fraudulent scheme that Plaintiff Mr. Clarks fell victim to is carried out and coordinated between the Contract Defendants and the Website Defendants, via their common cooperation, communication, planning, and fraudulent intentions.

56.     Upon information and belief, the Website Defendants intentionally received a benefit from the fraudulent actions committed by the Contract Defendants whereby the Contract Defendants in coordination and cooperation utilize the Listing and the Website to defraud potential borrowers such as Plaintiff Mr. Clarks.

57.     The Website's terms of use, agreements, and disclaimers provide warnings only to prospective borrowers, such as Plaintiff Mr. Clarks, despite the fact that the alleged prospective lenders who are represented in the Listing as private money lenders, real estate loan brokers, and real estate loan investors, are supposed to be the parties distributing large amounts of monies unto persons or companies whom they have likely never interacted with face-to-face with an uncertain risk of repayment default by the prospective borrowers.

58.     The Website requires that prospective borrowers such as Plaintiff Mr. Clarks to enter into a contract with Defendants and pay a $97 registration fee and satisfy monthly payments to maintain access to the Listing. However, the prospective lenders, who are represented in the Listing as private money lenders, real estate loan brokers, and real estate loan investors, pay nothing to be represented in the Listing despite having the most to gain from free marketing through the Listing.

59.     The Website Defendants received notice from Plaintiff Mr. Clarks as early as August 31, 2013, that conmen and fraudulent criminals were at large on the Website and in the

Listing, thereby victimizing Plaintiff Mr. Clarks and other prospective borrowers who purchased access to the Listing, because Plaintiff Mr. Clarks emailed the Website's customer support notifying the Website (owned and operated by the Website Defendants) that Defendant Organization 1 requested payment preliminary to tendering a private money loan unto Plaintiff Mr. Clarks.  The August 31, 2013, email is incorporated by reference and attached hereto as **Exhibit C**.

60.     Despite being notified of suspicious activity committed by Defendant Organization 1 that amounted to a violation of the terms of use for prospective lenders, the Website Defendants did not respond to Plaintiff Mr. Clarks or act in response to Plaintiff Mr. Clarks' notice unto them via email, dated August 31, 2013, included herein as Exhibit C.

61.     Furthermore, at least as early as August 29, 2013, the Website Defendants knew or should have known that conmen and fraudulent criminals frequently contacted and solicited the Listing's subscribers.  On August 29, 2013, a blog was published delineating the experience of another victim of the conmen and fraudulent criminals that are at large related to the Listing and the Website.  A copy of the blog is incorporated by reference and attached hereto as **Exhibit D**.

62.     The August 29, 2013, blog mentioned "Nick Hoffman, Doug Smith, and Loan Market Association" and described them as having attempted to induce the author to pay monies unto them for payment protection insurance in exchange for purported private loan monies.  See Ex. D.  The author explained further that after investigating "Nick Hoffman, Doug Smith, and Loan Market Association" he or she found that no such parties were represented on the Listing. See Ex. D.

63.     Upon information and belief, the Website Defendants provided access to the August 29, 2013, blog's author's personal information to the company (Loan Market Association)

who contacted him or her requesting that he or she purchase payment protection insurance, because the company contacted the author first and referenced private money goldmine.

64.     The August 29, 2013, blog was accompanied by a comments section.  See Ex. D. A Mr. Tylor More shared a similar experience with the same parties in the comments section.  See Ex. D.  Mr. Tylor More posted on September 17, 2013, in the comments section to the August 29, 2013, blog that on the morning of September 17, 2013, he received an email from Nick Hoffman at Loan Market Association and provided the text of said email in his comment, dated September 17, 2013.

65.     Mr. Tylor More received an email from Nick Hoffman at Loan Market Association 17 days after Plaintiff Mr. Clarks notified the Website Defendants via email, dated August 31, 2018, included herein as Exhibit C.  Despite representing that they will remove prospective lenders from the Listing who request preliminary payments from prospective borrowers such as Plaintiff Mr. Clarks, the Website Defendants did not do so.

66.     The text from the email that Mr. Tylor More received, which he included in his September 17, 2013, comment to the August 29, 2013, blog, was identical to the text of an email that Plaintiff Mr. Clarks received from Nick Hoffman at Loan Market Association.  See Ex. D.  A copy of the email that Plaintiff Mr. Clarks received, which was identical to an email that Mr. Tylor More received, is incorporated by reference and attached hereto as **Exhibit E**.

67.     A slew of other similar reviews can be found on the internet written by authors who purport to be victims of the Listing's conmen and fraudulent criminals.  A compilation of but a few of such comments has been compiled into one document.  The document is incorporated by reference and attached hereto as **Exhibit F**.

68.     Despite receiving notice of fraudulent activity conducted on the Website through

16

the Listing, the Website Defendants have not altered, amended, or revised their terms of use in any significant fashion, since at least August 29, 2013.

69.     Upon information and belief, the Website Defendants have a strong interest in allowing the fraudulent scheme to continue to operate via the Website and the Listing, because they receive a direct benefit from the Contract Defendants in exchange for the ability to carry out the fraudulent scheme.

70.     Upon information and belief, the Website Defendants receive a financial benefit via the alleged private money lenders, real estate loan brokers, and real estate loan investors, in exchange for selling the personal information of prospective borrowers such as Plaintiff Mr. Clarks.

71.     Upon information and belief, the Website Defendants and the Contract Defendants collectively operate the fraudulent scheme through the Website and the Listing, under the Direction of Defendant Mr. Smith.

72.     Upon information and belief, Defendant Mr. Doug Smith created the Website, the Listing, and the organizational structures associated therewith with the intention and for the purpose of operating the fraudulent scheme to which Plaintiff Mr. Clarks fell victim to and suffered financial loss culminating to approximately $900,000.00.

## COUNT I – FRAUD AS TO ALL NAMED DEEFNDANTS

Plaintiff Mr. Clarks restates herein and incorporates all allegations contained in the foregoing paragraphs, and furthermore states the following:

73.     The Website Defendants represented that the Listing provided access to legitimate private money lenders, real estate loan brokers, and real estate loan investors when in reality it provides access to conmen and fraudulent criminals.   They further represent and at all times

mentioned herein represented that they have no accounting as to the transactions that occur as a result of access to the Listing, and that they have no knowledge of who actually conducts business from the Listing.

74.     The Contract Defendants repeatedly represented to Plaintiff Mr. Clarks at all times relevant to this action that they would tender unto him purported private money loans in various amounts that he requested.

75.     Upon information and belief, the Contract Defendants never had available the amounts of funds which Plaintiff Mr. Clarks had requested from them in the form of a private money loans.  The Contract Defendants never intended to tender any monies to Plaintiff Mr. Clarks, and knew so at the times in which the Contract Defendants represented that they would tender private loan monies, which is evidenced by the fact that Plaintiff Mr. Clarks never received any monies from the Contract Defendants despite there being seven of them.

76.     Upon information and belief, the Contract Defendants and other conmen and fraudulent criminals provide and at all times mentioned herein provided a benefit to the Website Defendants in exchange for unlimited free use of the Website and the Listing.  Said benefit was known to the Contract Defendants and the Website Defendants at all relevant times to this action.

77.     Plaintiff Mr. Clarks' allegation that the Website Defendants received a benefit from allowing the Contract Defendants to execute Defendants' fraudulent scheme is furthered by the fact that he delivered notice unto the Website Defendants regarding Defendant Organization 1's request for preliminary payment, in violation of the Website's terms, yet the Website Defendants did not disallow Defendant Organization from utilizing information related to prospective borrowers such as Plaintiff Mr. Clarks.

78.     The benefit that the Website Defendants receive from said conmen and fraudulent

criminals indicates the Website Defendants' knowledge of the falsity of their representation that they provide access to private money lenders, real estate loan brokers, and real estate loan investors, and their representation that they have no accounting or knowledge of business that is conducted as a result of access to the Listing or using the Website.

79.     The Website Defendants furthermore claim to have no accounting or knowledge of business that is conducted as a result of accessing the Listing or the Website, but yet Defendant Organization 1 represented to Plaintiff Mr. Clarks via email, dated July 22, 2013, included herein as Exhibit E, that it was a reputable lender, "certified by Private Money Gold Mine and My House Deals (Doug Smith) because [it is] the most active private money lender at Privatemoneygoldmine [sic] and Myhousedeals [sic] . . ."  See Ex. E.

80.     The Website Defendants made such representations in order to induce Plaintiff Mr. Clarks to pay the subscription fees associated with the Website and the Listing and to receive a benefit from the Contract Defendants upon their taking of Plaintiff Mr. Clarks' monies.  This notion is furthered by the fact that Plaintiff Mr. Clarks gave the Website Defendants notice of fraudulent activity that was in direct contradiction to the Website's terms, via the August 31, 2013, email and the Website Defendants responded with inaction.  See Ex. C.

81.     The Contract Defendants represented to Plaintiff Mr. Clarks that they had private money funding available in the amounts that he requested in order to induce him to pay fictitious and fraudulent preliminary payments, which the Contract Defendants falsely represented as necessary.

82.     Plaintiff Mr. Clarks reasonably relied on information represented on the Website, in the Listing, by the Contract Defendants, and by the Website Defendants, related to the Listing's and the Website's legitimacy and instructions.

83.     The Website Defendants represent and at all times mentioned herein represented themselves as reputable real estate investment specialists.  Defendant Mr. Smith further shared a biographical memorandum (hereinafter the "Bio Memo") related to his journey to becoming a private money real estate lender/ investor, which Plaintiff Mr. Clarks read, was aware of, and relied on at all times relevant to this action.  A copy of the Bio Memo is incorporated by reference and attached hereto as **Exhibit G**.  In the Bio Memo, Doug Smith represents himself as an expert in the field and advertises his products as those that were produced by such an expert.

84.     Despite acting through the guise of Defendants FM and REI, Defendant Mr. Smith is liable for the fraudulent scheme that he planned, orchestrated, and carried out in association with the Contract Defendants because no company can commit fraud on its own.  The commission of fraud requires actions committed by a natural person who operates a company, in this case, Defendant Mr. Smith.

85.     The complexity of Defendants' fraudulent scheme further indicates that the Contract Defendants and the Website Defendants are one in the same.  Upon information and belief, the Contract Defendants do not exist as a legitimate organizations or entities, and are fictitious organizations created by the Website Defendants in order to carry out Defendants' fraudulent scheme via the Website and the Listing.  Therefore, the Website Defendants and the Contract Defendants jointly organize and operate the fraudulent scheme as parties that are identifiable as one in the same, executing the fraudulent scheme under fictitious trade names.

86.     The Contract Defendants held themselves out as certified and qualified lenders who were endorsed by the Website and, and repeatedly reassured Plaintiff Mr. Clarks that the preliminary payments that he tendered unto them were necessary and would enable him to receive a private money loan.

87.     If the Website Defendants did not falsely represent the conmen and fraudulent criminals represented in the Listing as private money lenders, real estate loan brokers, and real estate loan investors, Plaintiff Mr. Clarks would not have paid monies unto the Website Defendants in order to obtain access to the conmen and fraudulent criminals who prey on prospective borrowers such as Plaintiff Mr. Clarks via the Website and the Listing.  Therefore, Plaintiff Mr. Clarks would not have been put into contact with the Contract Defendants with whom the Website Defendants organized and carried out the fraudulent scheme that is the subject matter of this action. Without being in contact with Plaintiff Mr. Clarks, the Contract Defendants could not have taken Plaintiff Mr. Clarks' monies through the same processes and practices.

88.     Furthermore, disregarding the Website Defendant's material participation in the fraudulent scheme for a moment, and assuming for the sake of argument that the Contract Defendants and the Website Defendants are not one in the same, if the Contract Defendants did not falsely represent that they would tender unto Plaintiff Mr. Clarks purported private loan monies in response to Plaintiff Mr. Clarks' satisfaction of allegedly necessary preliminary payments, then Plaintiff Mr. Clarks would not have suffered any losses, because he would not have tendered any preliminary payments.

89.     If Plaintiff Mr. Clarks were presented with the truth regarding the Website, the Website Defendants, the Contract Defendants, the preliminary payments purported to be origination and administrative fees, and every other aspect associated therewith, Plaintiff Mr. Clarks would not have suffered any loss because he would not have been induced to pay monies unto the Contract Defendants pursuant to the vast fraudulent scheme that is mutually planned, carried out, and conducted by Defendants.

    WHEREFORE, Plaintiff Henry James Clarks respectfully requests that this Honorable

Court:

    A.  GRANT judgment in favor of Plaintiff Henry James Clarks against Defendants, jointly and severally, in the amount of $900,000.00 plus interest, reasonable attorney's fees, and costs and expenses of this action, for Defendants' fraud, breach of contract, unjust enrichment, and misappropriation of funds, and order Defendants to pay the same unto Plaintiff Henry James Clarks' counsel; and

    B.  For further relief as this Honorable Court deems just and proper.

**COUNT II – BREACH OF CONTRACT AS TO ALL NAMED DEFENDANTS**

Plaintiff Mr. Clarks restates herein and incorporates all allegations contained in the foregoing paragraphs, and furthermore states the following:

90.    Plaintiff Mr. Clarks entered into an agreement with the Website Defendants whereby in exchange for an initial subscription fee and satisfaction of monthly subscription fees from Plaintiff Mr. Clarks, the Website Defendants were to provide unto Plaintiff Mr. Clarks a proprietary list of prospective lenders who were represented as private money lenders, real estate loan brokers, or real estate loan investors, in the Listing.

91.    The Website Defendants accepted Plaintiff Mr. Clarks' subscription monies, and they in turn materially breached the agreement with Plaintiff Mr. Clarks by providing access to information related to conmen and fraudulent criminals, despite guaranteeing their own confidence in the Listing of alleged private money lenders, real estate loan brokers, and real estate loan investors. Furthermore, the conmen and fraudulent criminals that the Website Defendants connected Plaintiff Mr. Clarks with were fictitious organizations created by or in coordination with the Website Defendants for the purpose of wrongfully inducing a benefit from Plaintiff Mr. Clarks in the form of monies.

92.     The Website Defendants only provide disclaimer warnings to and collect subscription fees from prospective borrowers such as Plaintiff Mr. Clarks thereby enabling and authorizing said conmen and fraudulent criminals to prey on prospective borrowers such as Plaintiff Mr. Clarks.  This reality is in direct contrast to the Website Defendants' representation to Plaintiff Mr. Clarks that said conmen and fraudulent criminals were purported private money lenders, real estate loan brokers, and real estate loan investors, because purported "lenders" on the Listing are not required to pay monies to be represented in the Listing or acknowledge disclaimers about safe lending practices.  Plaintiff Mr. Clarks entered into an agreement with the Website Defendants to subscribe to the Listing, via the Website, based on the Website Defendants' representation that the Listing provided information related to private money lenders, real estate loan brokers, and real estate loan investors.

93.     Plaintiff Mr. Clarks also entered into agreements with the Contract Defendants by which the Contract Defendants were to tender unto Plaintiff Mr. Clarks private money loans for the purpose of multi-family real estate investment projects in Accokeek, Maryland.  The terms of the agreements between Plaintiff Mr. Clarks and the Contract Defendants are outlined herein in paragraph number 35.

94.     The material performance obligation as to the Contract Defendants was to tender unto Plaintiff Mr. Clarks private money loans, the amounts of which were agreed upon between Plaintiff Mr. Clarks and the Contract Defendants.

95.     Plaintiff Mr. Clarks performed above and beyond his performance obligations under the agreements by paying unto the Contract Defendants the preliminary payments that they requested of Plaintiff Mr. Clarks.  Said preliminary payments were not actually agreed upon as Plaintiff Mr. Clarks' obligations pursuant to the agreements between Plaintiff Mr. Clarks and the

Contract Defendants.  Plaintiff Mr. Clarks tendered said preliminary payments in an effort to be as cooperative as possible in order that the Contract Defendants would tender unto him the private money loans in amounts that were agreed upon.

96.     Despite Plaintiff Mr. Clarks' performance above and beyond his obligations pursuant to the agreements between Plaintiff Mr. Clarks and the Contract Defendants the Contract Defendants materially breached their agreements with Plaintiff Mr. Clarks by failing to tender any monies unto Plaintiff Mr. Clarks.

WHEREFORE, Plaintiff Henry James Clarks respectfully requests that this Honorable Court:

A.  GRANT judgment in favor of Plaintiff Henry James Clarks against Defendants, jointly and severally, in the amount of $900,000.00 plus interest, reasonable attorney's fees, and costs and expenses of this action, for Defendants' fraud, breach of contract, unjust enrichment, and misappropriation of funds, and order Defendants to pay the same unto Plaintiff Henry James Clarks' counsel; and

B.  For further relief as this Honorable Court deems just and proper.

**COUNT III – UNJUST ENRICHMENT AS TO ALL NAMED DEFENDANTS
(FORMERLY STYLED AS MONEY HAD AND RECEIVED)**

Plaintiff Mr. Clarks restates herein and incorporates all allegations contained in the foregoing paragraphs, and furthermore states the following:

97.     Assuming, *arguendo*, that the agreements under which Plaintiff Mr. Clarks paid monies unto the Contract Defendants are not valid or binding, Defendants were unjustly enriched to the extent of the amount of monies that Plaintiff Mr. Clarks paid unto them.

98.     Defendants received a benefit in the amount of the monies that Plaintiff Mr. Clarks paid unto the Contract Defendants.  The Contract Defendants received the monies directly from

Plaintiff Mr. Clarks, resulting in a benefit, and, upon information and belief, the Website Defendants received a benefit from the Contract Defendants via the Contract Defendants' benefit, in exchange for allowing the Contract Defendants to utilize the Website and the Listing to induce monies from potential borrowers such as Plaintiff Mr. Clarks.

99.     Said benefit that was received by Defendants was received unjustly because it was by the infringement of Plaintiff Mr. Clarks' interest.

100.     Plaintiff Mr. Clarks only had an interest in paying monies unto the Contract Defendants to the extent that he was to receive millions of dollars in private money loans in return.

101.     To accept Plaintiff Mr. Clarks' monies without protecting the interests by which Plaintiff Mr. Clarks paid said monies unto the Contract Defendants is for the Defendants to receive a benefit by the infringement of Plaintiff Mr. Clarks' interest.

102.     Plaintiff Mr. Clarks paid monies unto the Contract Defendants that Defendants received the benefit of without satisfying the interests by which said monies were tendered unto them by Plaintiff Mr. Clarks.

WHEREFORE, Plaintiff Henry James Clarks respectfully requests that this Honorable Court:

A.  GRANT judgment in favor of Plaintiff Henry James Clarks against Defendants, jointly and severally, in the amount of $900,000.00 plus interest, reasonable attorney's fees, and costs and expenses of this action, for Defendants' fraud, breach of contract, unjust enrichment, and misappropriation of funds, and order Defendants to pay the same unto Plaintiff Henry James Clarks' counsel; and

B.  For further relief as this Honorable Court deems just and proper.

**COUNT IV – CONVERSION AS TO THE CONTRACT DEFENDANTS**
**(FORMERLY STYLED AS MISAPPROPRIATION OF FUNDS)**

Plaintiff Mr. Clarks restates herein and incorporates all allegations contained in the foregoing paragraphs, and furthermore states the following:

103.    The Contract Defendants represented that Plaintiff Mr. Clarks was required to satisfy preliminary payments, in the form of purported origination and administrative fees, in order that he could receive a transfer of the private loan monies which he was promised in exchange for said preliminary payments.

104.    The Contract Defendants therefore specified for what purposes that Plaintiff Mr. Clarks was to pay monies unto them and the amount of monies associated with each purpose.

105.    Plaintiff Mr. Clarks paid monies unto the Contract Defendants for specific purposes dictated by the Contract Defendants and in the specific amounts dictated by the Contract Defendants.

106.    The Contract Defendants ensured Plaintiff Mr. Clarks that all requested preliminary payments were necessary and that Plaintiff Mr. Clarks would receive private loan monies in return for satisfying said preliminary payments.

107.    Despite paying specific amounts of monies unto the Contract Defendants that were dictated by them for specific purposes also dictated by them they failed to utilize said monies for their specified purposes.  This Contract Defendants repeatedly assured Plaintiff Mr. Clarks that the preliminary payments would enable them to tender unto Plaintiff Mr. Clarks the purported private loan monies, but Plaintiff Mr. Clarks never received any private loan monies.

108.    Therefore, the monies that Plaintiff Mr. Clarks paid unto the Contract Defendants for satisfaction of purported origination and administrative fees were used for other purposes than those which were designated.  If the monies that Plaintiff Mr. Clarks paid unto the Contract Defendants in order to satisfy purported origination and administrative fees were used for their

specified purposes, Plaintiff Mr. Clarks would have received private loan monies from the Contract Defendants.  However, Plaintiff Mr. Clarks received no private loan monies from the Contract Defendants.

WHEREFORE, Plaintiff Henry James Clarks respectfully requests that this Honorable Court:

A.  GRANT judgment in favor of Plaintiff Henry James Clarks against Defendants, jointly and severally, in the amount of $900,000.00 plus interest, reasonable attorney's fees, and costs and expenses of this action, for Defendants' fraud, breach of contract, unjust enrichment, and misappropriation of funds, and order Defendants to pay the same unto Plaintiff Henry James Clarks' counsel; and

B.  For further relief as this Honorable Court deems just and proper.

**FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT**

1.                            That Plaintiff is, and at all times mentioned herein is an individual who resides in the Prince George's County, State of Maryland.

2.                            That Defendants are residents and / or entities with principal place of business in the State of Texas and routinely engage and operate their business of selling proprietary listing of private money lenders, real estate loan brokers, and real estate loan investors who are Defendants partners in Prince George's County, State of Maryland.

3.     That Defendants hold themselves out as a legitimate proprietary listing providers of private money lenders, real estate loan brokers, and real estate loan investors in the State of Maryland.

4.     That the contract upon which this action is based was made and was to be performed in the State of Maryland.

5. ~~That the Circuit Court of Maryland in Prince George's County has jurisdiction over all Defendants, as this is the principal place of business activities for all Defendants in the transactions with Plaintiff.~~

6. ~~That the Circuit Court of Maryland in Prince George's County is the proper venue in which an action is to be brought against the Defendants.~~

7. ~~That Plaintiff was induced to invest monies in non-existing private money lenders, real estate loan brokers, and real estate loan investors pursuant to the proprietary listing provided by the Defendants from 2013 through the end of year 2016.~~

8. ~~That from 2013 through 2016, Plaintiff relied on Defendants proprietary listing to select private money lenders, real estate loan brokers, and real estate loan investors with whom Plaintiff entered into investment agreements whereby Plaintiff was induced to invest the total sum of $900,000.00 for the purpose of investing.~~

9. ~~That Plaintiff has performed all of the conditions, covenants and promises required by it to be performed in accordance with the terms and conditions of the contract with the Defendants and its partners, by providing funds for proprietary listing to Defendants and investing aforementioned sum of $900,000.00 relying on Defendants proprietary listing.~~

10. ~~That Defendants, and each of them, breached their agreement with Plaintiff by failing and refusing to perform in good faith their promise to provide legitimate proprietary listing of private money lenders, real estate loan brokers, and real estate loan investors so that Plaintiff's funds were invested in legitimate entities.~~

11. ~~That as a result of the breach of the Defendants, and each of them, in the obligations pursuant to the contract, the entire sum of $900,000.00 lost pursuant to Defendants proprietary listing of private money lenders, real estate loan brokers, and real estate loan investors, and each~~

of them, for the purpose of investing is now due, owing, and unpaid.

12.      That demand has been made on Defendants, and each of them, for repayment but Defendants, and each of them have failed and refused and continue to fail and refuse, to repay the sum lost by Plaintiff for the purposes of investing that was induced by Defendants proprietary listing.

13.      That Defendants, and each of them, have therefore breached their contract with Plaintiff, who has been damaged thereby in the sum of $900,000.00 plus interest at the legal rate from and after the date due according to proof.

                                                  **SECOND CAUSE OF ACTION FOR MONEY HAD AND RECEIVED**

14.      That Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs one through thirteen above.

15.      That from about 2013 through end of 2016, Defendants, and each of them, became indebted to Plaintiff in the sum of $900,000.00 for monies provided by Plaintiff to Defendants and its partners, and each of them, at their request for the purpose of investing through the acquisition of proprietary listing sold by Defendants to Plaintiff.

16.      That no part of the sum provided for investment has been repaid, although payment has been demanded, leaving the balance due, owing, and unpaid to Plaintiff in the amount of $900,000.00 plus interest at the legal rate from and after 2016.

                                                  **THIRD CAUSE OF ACTION BREACH OF FIDUCIARY DUTY**

17.                                         That Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs one through sixteen above.

18.                         That Defendants induced Plaintiff to invest $900,000.00 and made promises that the funds would be well invested when Defendants sold the proprietary list of private money lenders, real estate loan brokers, and real estate loan investors to the Plaintiff.

19.                         That Plaintiff believed and relied upon the assertions made by the Defendants about the proprietary listing of private money lenders, real estate loan brokers, and real estate loan investors sold to the Plaintiff.

20.                         That Plaintiff's funds were not invested as promised by the Defendants and accounted for to the Plaintiff by Defendants partners who are private money lenders, real estate loan brokers, and real estate loan investors.

21.     That Plaintiff relied in good faith upon the Defendants proprietary listing of private money lenders, real estate loan brokers, and real estate loan investors regarding investment of funds, as Defendants held themselves out to be experts.

22.     That Defendants had a fiduciary duty and obligation to safeguard and protect the Plaintiff's funds which they induced him to invest with Defendants partners who are private money lenders, real estate loan brokers, and real estate loan investors listed on Defendants proprietary listing.

23.         That Defendants, and each of them, have therefore breached their fiduciary duty to Plaintiff, who has been damaged thereby in the sum of $900,000.00 plus interest at the legal rate from and after the date due according to proof.

                         **FOURTH CAUSE OF ACTION FOR MISAPPROPRIATION OF FUNDS**

24.                         That Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs one through twenty-three above.

30

25. That Defen6ants knew they were receiving funds from the Plaintiff for Defendants proprietary listing of private money lenders, real estate loan brokers, and real estate loan investors.

26. That Defendants never intended to provide a legitimate listing of private money lenders, real estate loan brokers, and real estate loan investors in which the Plaintiff's funds would be invested to benefit the Plaintiff.

27. That, to date, Plaintiff has never received any accounting of the monies invested from the Defendants and its partners regarding the listing of private money lenders, real estate loan brokers, and real estate loan investors that Plaintiff was induced into investing monies with.

28. That Defendants and its partners misappropriated the funds in the amount of $900,000.00, which they received from the Plaintiff.

**FIFTH CAUSE OF ACTION FOR FRAUD**

29. That Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs one through twenty-eight above.

30. That from about 2013 through end of 2016, Defendants, and its partners each of them, represented to Plaintiff that they would use their best efforts to provide a proprietary listing of private money lenders, real estate loan brokers, and real estate loan investors with whom Plaintiff would invest his funds in the amount of $900,000.00.

31. These representations were false and Defendants knew the falsity of these statements at the time they were made.

32. That at various times Defendants and their agents assured and gave false promises to Plaintiff that the funds were invested properly and that Plaintiff

~~would receive accounting in near future from the private money lenders, real estate loan brokers, and real estate loan investors.~~

~~33.     That Plaintiff is informed, believes and thereon alleges that Defendants, and each of them, had no intention of providing a legitimate proprietary listing of private money lenders, real estate loan brokers, and real estate loan investors for the purpose of investing Plaintiff's funds.~~

~~34.                                          Defendants sold their proprietary listing of private money lenders, real estate loan brokers, and real estate loan investors to Plaintiff for the purpose of investing, knowing full well that the funds were going to be misused and the funds were diverted for other purposes that were not disclosed to the Plaintiff.~~

~~35.     That Plaintiff relied on the representations of Defendant when Defendants sold proprietary listing of private money lenders, real estate loan brokers, and real estate loan investors and Plaintiff would not have given Defendants the funds to purchase the proprietary listing otherwise.~~

~~36.     That Plaintiff is informed, believes and thereon alleges that Defendants, and each of them, misused and did use Plaintiff's funds paid to purchase the proprietary listing for the specific purpose of depriving Plaintiff of his funds, to harass Plaintiff in his business, and to defraud Plaintiff, all with malice toward Plaintiff.~~

~~37.     That Plaintiff has been injured by loss of use of the funds, loss of reputation, and an inability to compete in the market without the use of said funds. Plaintiff seeks compensatory damages in the amount of $900,000.00 for said acts.~~

~~38.       That these acts were malicious, fraudulent and oppressive, justifying an award of consequential and punitive damages in the amount of $900,000.00 so that Defendants, and each of them, will not engage in such conduct in the future and make an example of them.~~

~~**WHEREFORE PLAINTIFF PRAYS,** for judgment against Defendants, and each of them, as~~

follows:

For the sum of $900,000.00 for breach of contract and the value of its performance.

For interest thereon at the legal rate from and after January 2013.

For $900,000.00 punitive damages for defendants' fraud.

For punitive damages according to proof.

For reasonable attorneys' fees and costs incurred herein.

For such other and further relief as the court may deem just and proper.

Respectfully submitted,

~~September 26~~June 7, 201~~8~~9 _____

Date _____

Anupa Mukhopadhyay, Esquire, Bar No. 29354
10665 Stanhaven Place, Suite 300A
White Plains, MD 20695
Tel:  301-396-4668
Fax:  866-233-5294
Email: anupa@anupalaw.com
*Counsel for Plaintiff Henry James Clarks*