# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| **HENRY JAMES CLARKS,** | * |
| Plaintiff, | * |
| v. | Case No.: GJH-19-1014 |
| | * |
| **PRIVATE MONEY GOLDMINE,** *et al.*, | |
| | * |
| Defendants. | |
| | * |

## MEMORANDUM OPINION

Plaintiff Henry James Clarks brings this civil action against Defendants REI Network, LP, FM 41, Inc., and John Douglas Smith (collectively, the "Website Defendants") and Defendants Guaranteed Bank Loans, Larry Scott Loan Company, West End Finance Company, Streamline Loans, Kingdom Financial Services Nigeria, Glenn Group Loans, and Lonmond Finance Company (collectively, the "Contract Defendants"). ECF No. 15-3. He alleges claims of fraud, breach of contract, and unjust enrichment against all Defendants, and a claim of conversion against Contract Defendants based on allegedly fraudulent money lending transactions that occurred between Plaintiff and Contract Defendants after the parties connected on a website operated by Website Defendants. *Id.* Pending before the Court is Website Defendants' Motion to Dismiss Amended Complaint or, in the Alternative, for Summary Judgment, ECF No. 23, and Plaintiff's Motion for Discovery Conference, ECF No. 21.[1] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Website

---

[1] Also pending before the Court are Website Defendants' Motion to Dismiss Complaint, ECF No. 11, and Plaintiff's Motion for Leave to File Amended Complaint, ECF No. 15. By its July 9, 2019 Order, the Court accepted Plaintiff's Amended Complaint for filing. ECF No. 20. Thus, Plaintiff's Motion for Leave to File Amended Complaint is granted and Website Defendants' Motion to Dismiss Complaint is denied as moot.

1

Defendant's Motion to Dismiss Amended Complaint or, in the Alternative, for Summary Judgment, construed as a Motion to Dismiss, is granted, and Plaintiff's Motion for Discovery Conference is denied.

## I. BACKGROUND[2]

Defendant REI Network, LP operates www.privatemoneygoldmine.com (the "Website"), an online subscription service that connects prospective private money borrowers and lenders. ECF No. 15-3 ¶¶ 26, 29. Defendant FM 41, Inc. is a general partner of REI Network, LP, and Defendant Smith is the President of FM 41, Inc. *Id.* ¶¶ 26, 27. The Website provides access to a listing (the "Listing") of private money lenders, real estate loan brokers, and real estate loan investors who are interested in providing financial lending services in the form of private money loans to prospective borrowers for real estate investments. ECF No. 15-3 ¶¶ 1, 5, 6, 7, 25, 26. The Website also provides advice, instructions, tips, and directions to be used in association with the Listing. *Id.* ¶ 29.

The "What You Get" advertisement[3] associated with the Website indicates that in exchange for a subscription fee, prospective borrowers get access to the Listing, a private money video training series, a thirty minute one-on-one phone consultation with a private money expert, a "credibility kit" that the prospective borrower can use "to establish instant credibility with potential private lenders," and email and phone scripts for contacting lenders. *Id.* ¶¶ 31, 33; ECF No. 15-4 at 2.[4] The Website also includes a "Tips" section through which it advises subscribers

---
[2] Unless otherwise stated, the background facts are taken from Plaintiff's Amended Complaint, ECF No. 15-3, and are presumed to be true.
[3] When evaluating a motion to dismiss, the Court may consider documents that are explicitly incorporated into the complaint by reference, documents attached to the complaint as exhibits, or documents submitted by the movant so long as the submitted documents are integral to the complaint and there is no dispute about their authenticity. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).
[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

on the best ways to obtain monies from the prospective lenders on the Listing. ECF No. 15-3 ¶ 34; ECF No. 15-5.

In at least two locations on the Website, there is a disclaimer that states the Website is "confident in the quality of [the Listing]," but is "not acting as a broker for any funds that [subscribers] borrow from the private lenders" on the Listing and has "done no independent investigation with respect to, and [] make[s] no representation or warranty that, these lenders are honest, trustworthy, or fair. When they indicate an interest in lending, [the Website] simply collect[s] their information and add[s] it to the list." ECF No. 15-3 ¶ 32; ECF No. 15-4 at 2. The Website provided no such warnings to prospective lenders. ECF No. 15-3 ¶ 57. The Website's terms of service also strictly forbid preliminary payments to lenders and dictate that any prospective borrower who receives a preliminary payment request should notify the Website so that the prospective lender who requested a preliminary payment can be removed from the Listing. ECF No. 15-3 ¶ 43.

In 2013, Plaintiff paid monies unto Website Defendants in exchange for access to the Listing. ECF No. 15-3 ¶ 36. He indicated on the Website that he was searching for a private money loan in the amount of roughly $20 million to $25 million for multi-family real estate projects in the Accokeek, Maryland area. *Id.* Between 2013 and 2016, Plaintiff interacted with Contract Defendants, who held themselves out to be private money lenders, in connection with Plaintiff's proposed real estate projects. *Id.* ¶ 37–40. Contract Defendants first reached out to Plaintiff in 2013 to express excitement at the opportunity to conduct business with him in Accokeek, Maryland. *Id.* ¶ 41. They informed Plaintiff that he was qualified to obtain whatever amount of private loan monies that he requested but informed him that there would be a preliminary fee associated with transferring the requested loan to Plaintiff. *Id.* ¶ 42. Contract

Defendants characterized these fees as administrative and origination fees. *Id.* Plaintiff satisfied the allegedly required preliminary payments that were asked of him, but the Contract Defendants continued the cycle of asking for additional preliminary payments before agreeing to transfer any of the loan monies. *Id.* ¶¶ 45–47.

On August 31, 2013, during this cycle of paying preliminary fees in exchange for a promise of a loan, Plaintiff sent an email to Contract Defendant Guaranteed Bank Loans ("GBL") regarding the preliminary payment scheme and blind carbon copied the Website's customer support. *Id.* ¶ 59; ECF No. 15-6. The email referenced $9,815.00 in loan insurance and international transfer fees that Plaintiff had paid to Contract Defendant GBL and the fact that he had not received the agreed upon loan. *Id.* He stated, "I think that we have a very serious issue of theft and wire fraud that needs appropriate attention by investigative authorities, in combination with legal action." *Id.* The email went on to say:

> If neither of the return of funds or agreed upon loan deposit of $2.5M happen on Tuesday, September 3, 2013, I would say that I must follow-through at your recommendation and dialogue with investigative U.S. Agencies. If you are for real, and I do not factually know, but I seriously doubt it at this point, you will work with me on resolution of this without pulling everyone else into this matter. If you are not, the answer is clear and I pursue measures otherwise. I must exhaust whatever means at my disposal to either collect, pursue law enforcement, or initiate suit.

*Id.* Website Defendants did not respond to Plaintiff or take any action in response to the information in the email. ECF No. 15-3 ¶¶ 60, 68. The Amended Complaint does not indicate what action, if any, Contract Defendant GBL took in response to the email.

Plaintiff continued to pay the requested preliminary fees to Contract Defendants until 2016, when he represented to Contract Defendants that he was no longer able or willing to tender any more preliminary payments. *Id.* ¶ 48. At that point, the agents who were communicating

with Plaintiff on behalf of Contract Defendants "disappear[ed], vanish[ed], or cease[d] to communicate in any way, shape, or form with Plaintiff[.]" *Id.* In total, between 2013 and 2016, Plaintiff tendered preliminary payments to Contract Defendants amounting to $900,000.00, but he never received any of the loan monies that were promised. *Id.* ¶ 49.

On September 26, 2018, Plaintiff filed a Complaint against the Website and Website Defendants in the Circuit Court of Maryland for Prince George's County alleging breach of contract, money had and received, breach of fiduciary duty, misappropriation of funds, and fraud. ECF No. 1-2. The Website and Website Defendants subsequently removed to this Court on April 4, 2019, ECF No. 1, and Plaintiff later filed a Motion for Leave to File Amended Complaint on June 7, 2019, ECF No. 15. The Court accepted the Amended Complaint for filing on July 9, 2019. ECF No. 20.

The Amended Complaint removed the Website as a separate defendant and added Contract Defendants as defendants.[5] ECF No. 15. It alleges fraud, breach of contract, and unjust enrichment against all Defendants and conversion against Contract Defendants. ECF No. 15. With respect to Website Defendants, the Amended Complaint alleges at various points that Website Defendants received a benefit from Contract Defendants in exchange for the ability to carry out the fraudulent preliminary payment scheme, *id.* ¶¶ 56, 69; Website Defendants received a financial benefit in exchange for selling the personal information of prospective borrowers, *id.* ¶ 70; Website Defendants and Contract Defendants operated the preliminary payment scheme together, *id.* ¶ 71; Website Defendant Smith created the Website for the purpose of operating the fraudulent preliminary payment scheme, *id.* ¶ 72; and Website Defendants created the fictitious Contract Defendants in order to carry out the fraudulent preliminary payment scheme, *id.* ¶ 85.

---

[5] Contracts Defendants have yet to be served and are not the subject of the pending motions addressed in this Memorandum Opinion. Thus, this case will proceed against Contract Defendants upon proper service.

The Amended Complaint does not state the factual bases for these allegations, only that they are based "[u]pon information and belief." *Id.* ¶¶ 56, 69, 70, 71, 72, 85. Thus, Plaintiff's claims against Website Defendants appear to be based both on their alleged representations regarding the legitimacy of the prospective lenders in the Listing and their alleged involvement in Contract Defendants' preliminary payment scheme.

On July 11, 2019, Plaintiff filed a Motion for Discovery Conference, ECF No. 21, to which Website Defendants filed an opposition on July 25, 2019, ECF No. 22. Website Defendants also filed a Motion to Dismiss Amended Complaint or, in the Alternative, for Summary Judgment on September 3, 2019, ECF No. 23. Plaintiff filed a response on September 24, 2019, ECF No. 25, and Plaintiff filed a reply on October 15, 2019, ECF No. 27.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). However, Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, Case No. RDB–12–237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). A motion to dismiss under 12(b)(6) "test[s] the adequacy of a complaint." *Prelich v. Med. Res., Inc.*, 813 F. Supp. 2d 654, 660 (D. Md. 2011) (citing *German v. Fox*, 267 F. App'x 231, 233 (4th Cir. 2008)). Motions to dismiss for failure to state a claim do "not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Prelich*, 813 F. Supp. 2d at 660 (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To overcome a Rule 12(b)(6) motion, a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows

the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating the sufficiency of the plaintiff's claims, the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). However, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court should not grant a motion to dismiss for failure to state a claim unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50 (1989)). Where, as here, the defendant raises a statute of limitations defense, the defense is an appropriate ground for granting a motion to dismiss where the expiration of the relevant statute of limitation "is apparent from the face of the complaint." *Wright v. United States Postal Serv.*, 305 F. Supp. 2d 562, 563 (D. Md. 2004) (citing *Pantry Pride Enters., Inc. v. Glenlo Corp.*, 729 F.2d 963, 965 (4th Cir. 1984)).

Additionally, to state a claim sounding in fraud, as Plaintiff does here, a party must also "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires "that a plaintiff alleging fraud must make particular allegations of the time, place, speaker, and contents of the allegedly false acts or statements." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 249–50 (D. Md. 2000); *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (describing the "who, what, when, where, and how" of the

7

fraud claim). Despite these heightened requirements, "a court should hesitate to dismiss if it finds (1) that the defendant[s] [have] been made aware of the particular circumstances for which [they] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Nat'l Mortg. Warehouse, LLC v. Trikeriotis*, 201 F. Supp. 2d 499, 505 (D. Md. 2002) (describing pleading requirements in case of fraudulent conveyance) (internal citations omitted).

## III. DISCUSSION

Website Defendants move to dismiss the fraud, breach of contract, and unjust enrichment claims alleged against them in the Amended Complaint. They contend that these claims are barred by the statute of limitations and that Website Defendants are immune from liability under the Communications Decency Act ("CDA"), 47 U.S.C. § 230. They contend further that even if the claims were not barred by the statute of limitations or the CDA, the Amended Complaint fails to state a plausible claim for relief. Finally, Website Defendants contend that there is an insufficient basis to pierce the corporate veil so as to hold Defendant Smith liable in his individual capacity and Plaintiff has failed to allege any such claim against Defendant Smith in his individual capacity with sufficient specificity.

For the reasons that follow, the Court concludes that the statute of limitations and the CDA each provide a sufficient basis for dismissing the Amended Complaint. The Court finds further that Plaintiff's fraud-based claims against Website Defendants lack the required particularity and can therefore be dismissed on this ground as well.[6]

---

[6] Website Defendants alternatively move for summary judgment. The Court may, in its discretion, decline to consider materials presented outside of the pleadings. *See* Fed. R. Civ. P. 12(d); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 995–96 (4th Cir. 1997). Because the Court determines that the Amended Complaint must be dismissed on its face, it will exercise its discretion and decline to construe Website Defendants' Motion as a motion for summary judgment.

**A. Statute of Limitations**

Maryland law provides that "[a] civil action at law shall be filed within three years from the date it accrues." MD. CODE ANN., CTS. & JUD. PROC. § 5-101. "Generally, a claim accrues when the plaintiff suffers the actionable harm. The 'discovery rule' is an exception to this general rule, and operates to 'toll[] the accrual date of the action until such time as the potential plaintiff either discovers his or her injury, or should have discovered it through the exercise of due diligence.'" *Rounds v. Maryland-Nat'l Capital Park and Planning Comm'n*, 441 Md. 621, 654 (2015) (quoting *Poole v. Coakley & Williams Const., Inc.*, 423 Md. 91, 131 (2011)). "In other words, a [plaintiff] cannot fail to investigate when the propriety of the investigation is naturally suggested by circumstances known to him; and if he neglects to make such inquiry, he will be held guilty of bad faith and must suffer from his neglect." *Poffenberger v. Risser*, 290 Md. 631, 637 (1981) (quoting *Feritta v. Bay Shore Dev. Corp.*, 252 Md. 393, 402 (1969)). Unless there is a dispute as to when a plaintiff possessed the requisite degree of knowledge, the question of when the cause of action accrued is a legal determination for the court. *George v. Mass. Mut. Life. Ins. Co.*, Case No. ELH–17–1073, 2018 WL 656436, at *4 (D. Md. Feb. 1, 2018); *Poole*, 423 Md. at 131.

Website Defendants claim that Plaintiff's fraud, breach of contract, and unjust enrichment claims accrued when Plaintiff knew or should have known of the injury he allegedly suffered from using the Website, which was, at the latest, on August 31, 2013 when he emailed Contract Defendant GBL regarding the preliminary payment scheme. ECF No. 23-1 at 10. Thus, according to Website Defendants, Plaintiff's claims are time-barred because he did not initiate this case until more than three years later on September 26, 2018. *Id.* In opposition, Plaintiff contends that on August 31, 2013 he did not yet know that he had a cause of action against

9

Website Defendants specifically and the date upon which he discovered that cause of action is a disputed fact. ECF No. 25 at 10–12. Plaintiff contends further that even if his cause of action against Website Defendants did accrue on August 31, 2013, the statute of limitations should be tolled because Website Defendants fraudulently concealed their involvement in the preliminary payment scheme. *Id.* at 12–15.

Based on the facts alleged in the Amended Complaint, the Court finds that all three claims against Website Defendants accrued on August 31, 2013 at the latest. A breach of contract claim accrues when the contract was allegedly breached and when that breach was or should have been discovered. *Jones v. Hyatt Ins. Agency, Inc.*, 356 Md. 639, 648 (1999). Plaintiff's breach of contract claim is based on Website Defendants' alleged agreement with Plaintiff that they would provide him with a list of legitimate prospective lenders in exchange for a subscription fee and Plaintiff's allegation that they instead connected him with "conmen" and "fraudulent criminals." Based on the allegations in the Amended Complaint, Plaintiff knew of this alleged breach on August 31, 2013 at the latest when he sent an email to Contract Defendant GBL complaining about the preliminary payments he made to GBL and GBL's failure to provide the promised loan and stating that he doubted GBL was "for real." At this point, he reasonably should have known that Website Defendants had breached their alleged obligation to provide him with a list of legitimate lenders because he was on notice that one of the prospective lenders was not legitimate.

Fraud and unjust enrichment claims similarly accrue "when the wrong is discovered or when with due diligence it should have been discovered," *James v. Weisheit*, 279 Md. 41, 45 n.4 (1977), or when the plaintiff knows or should know that the defendant has been unjustly enriched, *Jason v. Nat'l Loan Recoveries, LLC*, 227 Md. App. 516, 531 (Md. Ct. Spec. App.

10

2016). Plaintiff's fraud and unjust enrichment claims are based both on Website Defendants' alleged misrepresentations regarding the legitimacy of the prospective lenders in the Listing and on Website Defendants' alleged involvement in the fraudulent preliminary payment scheme.

As with the breach of contract claim, Plaintiff knew Website Defendants had made misrepresentations about the legitimacy of the prospective lenders and that they had benefited from those misrepresentations at Plaintiff's expense in the form of the subscription fee on August 31, 2013 when he complained about Contract Defendant GBL's conduct. Thus, he was on notice of potential fraud and unjust enrichment claims against Website Defendants based on those alleged misrepresentations.

With respect to Plaintiff's claims based on Website Defendants' alleged involvement in the preliminary payment scheme, the text of Plaintiff's email to Contract Defendant GBL, which appears on the face of the Amended Complaint, indicates that he knew of the existence of the scheme and the injury he suffered (and would continue to suffer) as a result of that scheme on August 31, 2013. Even though, as Plaintiff contends, he did not know that Website Defendants were allegedly involved in the scheme at this point, it is the discovery of the injury, and not the discovery of the identity of one of the agents of that injury, that triggers the statute of limitations period. *See Pennwalt Corp. v. Nasios*, 314 Md. 433, 456–57 (1988) (holding that knowledge of the identity of a particular defendant is not a necessary element to trigger the running of the statute of limitations when the plaintiff has express or implied knowledge of an injury and its probable cause); *Iglesias v. Pentagon Title and Escrow, LLC*, 206 Md. App. 624, 665–66 (Md. Ct. Spec. App. 2012) (finding that the plaintiff's cause of action accrued when she became aware of allegedly fraudulent real estate transactions and the plaintiff's late discovery of the identity of one of the alleged tortfeasors did not delay the running of the statute of limitations); *Conaway v.*

*State*, 90 Md. App. 234, 252 (Md. Ct. Spec. App. 1992) (finding that the plaintiff's medical malpractice claim against a physician accrued when he first became aware of the circumstances surrounding his claim, even if he did not know the physician's identity).[7]

Because Plaintiff's claims against Website Defendants accrued on August 31, 2013, the three-year limitations period expired on August 31, 2016 unless, as Plaintiff suggests, it was tolled by Website Defendants' fraudulent concealment. Under Maryland law, "[i]f the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud." MD. CODE ANN., CTS. & JUD. PROC. § 5-203. "The aggrieved party asserting such fraud or concealment must plead affirmatively and with specificity the supporting facts in its complaint." *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 170 (2004) (citing *Doe v. Archdiocese of Washington*, 114 Md. App. 169, 186 (Md. Ct. Spec. App. 1997)). "The complaint relying on the fraudulent concealment doctrine must also contain specific allegations of how the fraud kept the plaintiff in ignorance of a cause of action, how the fraud was discovered, and why there was a delay in discovering the fraud, despite the plaintiff's diligence." *Id.* (internal quotation marks omitted).

The Amended Complaint does not satisfy these conditions. The Amended Complaint contains no specific allegations as to how Website Defendants' alleged fraud was discovered or

---

[7] The Amended Complaint provides nothing beyond conclusive assertions that Website Defendants were actually involved in the preliminary payment scheme, and it contains no factual allegations as to how or when Plaintiff discovered their alleged involvement. Thus, even if the late discovery of the identity of particular defendants could delay the running of the statute of limitations in this case, the Amended Complaint does not contain sufficient factual allegations to support application of such a rule. *See Shah v. HealthPlus, Inc.*, 115 Md. App. 327, 338 (Md. Ct. Spec. App. 1997) ("[I]f the discovery rule is extended to the beginning of the statute of limitations in a given action, the bill of complaint must still state with specificity those grounds upon which relief is predicated and upon which it can be afforded, including, perhaps equally importantly, the reasons for the invocation of the discovery rule…" (internal citations omitted)).

how the fraud prevented Plaintiff from learning of his cause of action. *See Dual, Inc.*, 383 Md. at 170. Rather, it contains only bare conclusions that Website Defendants helped to cover up Contract Defendants' fraud, participated in the fraud, or were themselves the Contract Defendants. *See, e.g.*, ECF No. 15-3 ¶¶ 56, 69, 70, 71, 72, 85. This is insufficient to state a claim under Rules 12(b)(6) and 8(a), *see Iqbal*, 556 U.S. at 678, let alone to plead fraudulent concealment under Rule 9(b), *see Adams*, 193 F.R.D. at 249–50. Moreover, the Amended Complaint contains no specific allegations regarding Plaintiff's diligent efforts to discover Website Defendants' alleged fraud, referring only to Website Defendants' lack of responses to Plaintiff's August 31, 2013 email, *see* ECF No. 15-3 ¶ 60, and blog posts by third-parties not involved in this case criticizing Website Defendants, *see id.* ¶¶ 61–68. Even in his response to the Motion to Dismiss, Plaintiff only makes a general reference to his "reasonable investigative efforts" to identify his cause of action against Website Defendants and states that he "eventually discovered the fraudulent scheme's connection to the website upon connecting the Website to the purported lenders' consistent pattern of requesting alleged loan processing fees followed by failure to tender loan monies." ECF No. 25 at 13. This statement is circular and conclusory and therefore lacks the requisite level of specificity.[8] As a result, the Amended Complaint fails to plead fraudulent concealment. Because Plaintiff's fraud, breach of contract, and unjust enrichment claims accrued on August 31, 2013 and he did not file the instant action until September 26, 2018 or provide any legally viable justification for his delay, these claims are

---

[8] Regardless, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (internal quotation marks omitted).

time-barred.[9] Accordingly, the Amended Complaint's claims against Website Defendants are dismissed.

### B. CDA Immunity

Even if Plaintiff's claims against Website Defendants based on their alleged involvement in the preliminary payment scheme were not time-barred, Website Defendants would be immune from liability under the CDA and therefore the claims against them can also be dismissed on this ground. "Recognizing that the Internet provided a valuable and increasingly utilized source of information for citizens, Congress carved out a sphere of immunity from state lawsuits for providers of interactive computer services to preserve the 'vibrant and competitive free market' of ideas on the Internet." *Nemet*, 591 F.3d at 254 (citing 47 U.S.C. § 230(b)(2) and *Zeran v. Am. Online, Inc.*, 129 F.2d 327, 330 (4th Cir. 1997)). Section 230 of the CDA "bar[s] state-law plaintiffs from holding interactive computer service providers legally responsible for information created and developed by third parties." *Id.* Thus, § 230 immunity distinguishes between a party that "creates or develops unlawful content" and "the interactive computer service provider who merely enables that content to be posted online." *See id.* "To further the policies underlying the CDA, courts have generally accorded § 230 immunity a broad scope." *Westlake Legal Grp. v. Yelp, Inc.*, 599 F. App'x 481, 485 (4th Cir. 2015) (quoting *Nemet*, 591 F.3d at 254) (internal quotation marks omitted).

Plaintiff does not appear to dispute that Website Defendants are interactive computer service providers under the CDA. Indeed, neutral intermediary platforms that connect users to one another, such as Airbnb and internet-based dating services, are often held to be immune from

---

[9] Plaintiff contends that it would be unjust as a matter of policy to find that his claims are time-barred. Maryland law already incorporates policy considerations into the statute of limitations and the discovery rule and fraudulent concealment doctrines. *See, e.g.*, *Doe*, 114 Md. App. at 175–78, 186–89. The Court declines to create a new public policy exception to the statute of limitations where Maryland law does not already recognize one.

14

suit for the wrongful conduct of their users. *See Zeran*, 129 F.3d at 331 (holding that AOL was immune from liability for a false advertisement posted by a third-party on an AOL bulletin board); *Herrick v. Grindr LLC*, 765 F. App'x 586, 589–90 (2d Cir. 2019) (holding that an internet-based dating application was a service provider and immune from liability for a user's harassing conduct on the application); *Bennett v. Google, LLC*, 882 F.3d 1163, 1167–68 (D.C. Cir. 2018) (holding that Google was immune from liability for a third-party's blog post); *Doe v. Backpage.com, LLC*, 817 F.3d 12, 20–23 (1st Cir. 2016) (holding that operator of online classified advertisement forum was immune from liability for third-parties' use of the forum to facilitate sex trafficking); *La Park La Brea A LLC v. Airbnb, Inc.*, 285 F. Supp. 3d 1097, 1104–5 (C.D. Cal. 2017) (holding that Airbnb was a service provider and therefore immune under the CDA, even where it provided ancillary services for use on its site and edited content provided by third-parties).

Plaintiff does contend, however, that Website Defendants are also content providers, and therefore not entitled to immunity in this case, because they published the Listing, provided advice on how to communicate with the prospective lenders, and disguised themselves as prospective lenders to perpetrate the fraudulent preliminary payment scheme. The Court disagrees.

First, the Amended Complaint is devoid of any factual enhancements demonstrating that Website Defendants disguised themselves as prospective lenders or otherwise published any original information about prospective lenders in the Listing that was not originally provided by the prospective lenders themselves. Such conclusory statements are not sufficient to plausibly plead that Website Defendants are internet content providers with respect to the Listing. *See Iqbal*, 556 U.S. at 678; *Nemet*, 591 F.3d at 255–56. Without these bare assertions, the allegations

in the Amended Complaint demonstrate only that Website Defendants are the parties that "merely enable[]" the prospective lenders to post their information online. *See Nemet*, 591 F.3d at 254. This is exactly the type of conduct that § 230 immunity is intended to protect. *Id.* Moreover, although Plaintiff is correct that Website Defendants do publish original content in the form of advice and instructions, the Amended Complaint contains no allegations that this content was unlawful or caused any harm to Plaintiff. *See Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1169 (9th Cir. 2008) ("[P]roviding *neutral* tools to carry out what may be unlawful or illicit searches does not amount to 'development' [of content] for purposes of the immunity exception."). Thus, even viewing the Amended Complaint in the light most favorable to Plaintiff, it plausibly alleges only that Website Defendants are service providers. They are therefore entitled to immunity under § 230 of the CDA and the state-law claims against them must also be dismissed on this basis.

### C. Failure to State a Claim

Finally, Rule 9(b) provides yet another reason to dismiss Plaintiff's fraud-based claims that Website Defendants were involved in the alleged preliminary payment scheme. Rule 9(b) requires that, for any claim sounding in fraud, "the circumstances constituting fraud be stated with particularity." *Haley v. Corcoran*, 659 F. Supp. 2d 714, 721 (D. Md. 2009) (citing Fed. R. Civ. P. 9(b)). The circumstances required to be pled with particularity are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999); *see also United States ex rel. Wilson*, 525 F.3d at 379 (to state a claim for fraud under Rule 9(b), a plaintiff must plead with particularity the "who, what, when, where, and how" of the alleged fraud (citation omitted)).

Here, the Amended Complaint lacks the required particularity to state a claim. As the Court has already stated, the Amended Complaint includes only conclusory statements that Website Defendants were involved in the scheme and provides no factual enhancements actually connecting Website Defendants to the scheme. It also lacks any specific details regarding how and when the alleged scheme unfolded, referring only generally to interactions Plaintiff had with agents of Contract Defendants between 2013 and 2016, the amount of money he ultimately lost to each Contract Defendant, and that Website Defendants were involved in various ways. These general allegations do not "identify each defendant's participation in the alleged fraud," *see Haley*, 659 F. Supp. 2d at 721, and simply do not provide Website Defendants ample notice "of the particular circumstances for which [they] will have to prepare a defense at trial," *see Nat'l Mortg. Warehouse*, 201 F. Supp. 2d at 505. Thus, Plaintiff's claims based on Website Defendants' alleged involvement in the preliminary payment scheme can also be dismissed for failure to state a claim with the required particularity.

## IV. CONCLUSION

For the foregoing reasons, Website Defendants' Motion to Dismiss Amended Complaint or, in the Alternative, for Summary Judgment is granted. The fraud, breach of contract, and unjust enrichment claims against Website Defendants are dismissed.[10] A separate Order shall issue.

Date: February 26, 2020         /s/_____
                                GEORGE J. HAZEL
                                United States District Judge

---

[10] In the pending Motion for Discovery Conference, Plaintiff requests that the Court order Plaintiff and Website Defendants to conduct a Rule 26(f) Discovery Conference so that Plaintiff can proceed with discovery against Website Defendants while attempting to serve the Contract Defendants. Because Website Defendants are now dismissed from this action, the Motion for Discovery Conference is denied.