**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

HENRY JAMES CLARKS,                         *

     Plaintiff,                                  *

v.                                                              Case No.: GJH-19-1014

                                                  *

PRIVATE MONEY GOLDMINE, *et al.*,

                                                  *

     Defendants.                             *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Henry James Clarks brings this civil action against Defendants REI Network L.P. ("REI"), FM 41, Inc. ("FM"), and John Douglas Smith (collectively, the "Website Defendants") and Defendants Guaranteed Bank Loans, Larry Scott Loan Company, West End Finance Company, Streamline Loans, Kingdom Financial Services Nigeria, Glenn Group Loans, and Lonmond Finance Company (collectively, the "Contract Defendants"). ECF No. 30-4; *see also* ECF No. 15-3. Plaintiff alleges claims of fraud, breach of contract, and unjust enrichment against all Defendants, and a claim of conversion against Contract Defendants, based on allegedly fraudulent money lending transactions that occurred between Plaintiff and Contract Defendants after the parties connected on a website operated by Website Defendants. ECF No. 30-4. Pending before the Court is Plaintiff's Motion for Leave to File Second Amended Complaint, ECF No. 30, and Plaintiff's Amended Motion for Leave to File Second Amended Complaint, ECF No. 32. The Website Defendants have opposed the motions. ECF No. 34. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, both motions are denied.

1

## I.    BACKGROUND[1]

Defendant REI Network, LP operates www.privatemoneygoldmine.com (the "Website"), an online subscription service that connects prospective private money borrowers and lenders. ECF No. 30-4 ¶¶ 5, 25, 29.[2] Defendant FM 41, Inc. is a general partner of REI Network, LP, and Defendant Smith is the President of FM 41, Inc. *Id.* ¶¶ 26, 27. The Website provides access to a proprietary listing ("the Listing") of private money lenders, real estate loan brokers, and real estate loan investors who are interested in providing private money loans to prospective borrowers for real estate investments. *Id.* ¶¶ 1, 5–7, 25–26. In exchange for a subscription fee, individuals receive access to the Listing as well as a thirty-minute one-on-one phone consultation with an alleged private money expert, a "credibility kit" intended for establishing instant credibility for the purpose of obtaining monies, email and phone scripts that make contacting lenders easy, and other resources containing advice on obtaining loans from prospective lenders on the list. *Id.* ¶¶ 31, 33–34.

In 2013, Plaintiff paid Website Defendants—REI, FM, and Mr. Smith—a registration fee in exchange for access to the Listing. *Id.* ¶ 36. Plaintiff indicated on the Website that he was seeking a private money loan in the amount of roughly $20 million to $25 million for multifamily real estate projects in the Accokeek, Maryland, area. *Id.* Through the Website, Contract Defendants—Guaranteed Bank Loans, Larry Scott Loan Company, West End Finance Company, Streamline Loans, Kingdom Financial Services Nigeria, Glenn Group Loans, and Lonmond Finance Company—holding themselves out as private money lenders, reached out to Plaintiff expressing their excitement about conducting business with him. *Id.* ¶¶ 40–41. First,

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.
[2] For purposes of this motion, the Court relies on the facts in the proposed Second Amended Complaint and presumes they are true.

though, they required certain preliminary fees, characterized as origination and administrative fees. *Id.* ¶ 41. The Website's terms of service strictly forbid preliminary payments to lenders and dictate that any prospective borrower who receives such a request should notify the Website so the lender can be removed from the Listing. *Id.* ¶ 43. Nevertheless, Plaintiff complied with Contract Defendants' request and paid the fees. *Id.* ¶ 45. The requests continued. On August 31, 2013, having now paid $9,185.00 in "loan insurance" and "international transfer fees," Plaintiff sent an email to Contract Defendant Guaranteed Bank Loans, blind carbon copying the Website's customer support. ECF No. 30-6 at 32. The email stated, "[i]t now appears clear that I have been taken and scammed/fleeced by you and Marcus, et. al. . . . I think that we have a very serious issue of theft and wire fraud that needs appropriate attention by investigative authorities, in combination with legal action." *Id.* Despite Plaintiff's apparent suspicions, he continued paying the requested fees. Between 2013 and 2016, Plaintiff paid Contract Defendants approximately $900,000.00 without receiving any funds in return. ECF No. 30-4 ¶¶ 37–40, 49–51.

On September 26, 2018, Plaintiff brought this action against Website Defendants in the Circuit Court of Maryland for Prince George's County. ECF No. 1-2. [3] On April 4, 2019, Defendants removed the case from the Circuit Court of Maryland to this Court. ECF No. 1. On June 7, 2019, Plaintiff filed a Motion for Leave to File Amended Complaint, removing the Website as a separate defendant and adding Contract Defendants as defendants. [4] ECF No. 15. The Court accepted the Amended Complaint for filing on July 9, 2019. ECF No. 20. On

---

[3] A more detailed summary of Plaintiff's core allegations can be found in the Court's earlier opinion addressing the Motion to Dismiss. ECF No. 28 at 2–6.

[4] It does not appear that the Contract Defendants have ever been served with the process in this case despite an order for Plaintiff to do so issued by the Court on February 26, 2020. ECF No. 29. Therefore, Plaintiff will be ordered to show cause why claims against the Contract Defendants should not dismissed for insufficient service of process. *See* Fed. R. Civ. P. 4(m).

September 3, 2019, Website Defendants filed a Motion to Dismiss Amended Complaint or, in the Alternative, for Summary Judgment. ECF No. 23. The Court granted the Motion to Dismiss, finding Plaintiff's claims were time-barred, that Defendants were immune from suit under the Communications Decency Act, and that Plaintiff had failed to meet the particularity requirement for fraud claims. ECF No. 28. However, the Court dismissed the Amended Complaint's fraud, breach of contract, and unjust enrichment claims without prejudice, stating that if Plaintiff believed he could file a Second Amended Complaint curing the defects in the Amended Complaint, he could do so within twenty-one days. ECF No. 29 at 1. Prior to filing, Plaintiff was required to meet and confer with Defendants to determine whether they consented to the filing of the Second Amended Complaint. *Id.*

On March 18, 2020, Plaintiff filed a Motion for Leave to File Second Amended Complaint. ECF No. 30. Plaintiff's proposed Second Amended Complaint includes additional facts concerning the timing and amount of payments made to Contract Defendants, ECF No. 30-4 ¶¶ 38, 40; additional facts concerning his efforts to "uncover the wrongdoing committed against him," including engaging Consumer Collections Associates in October 2013, engaging a law firm in July 2014, filing a police report in September 2015, communicating with law enforcement personnel and agencies between December 2015 and August 2016, *id.* ¶¶ 52–53, and filing a complaint in Arizona state court in December 2014, ECF No. 31 at 13–27; and an assertion that he "concluded in the Fall of 2016 that he was the victim of a serious and significant fraud/scam at the hands of Defendants," *id.* ¶ 74. The Second Amended Complaint also contains additional exhibits—spreadsheets detailing the amount, date, recipient, recipient bank, and location of each payment to Contract Defendants, ECF No. 30-6 at 7–23; a Prince George's

County Police Incident report, *id.* at 24–26; and email correspondence between Plaintiff and government agencies, *id.* at 27–30.

Plaintiff's Motion for Leave to File Second Amended Complaint stated that Defendants had consented to the filing. ECF No. 30 at 2. That same day, Plaintiff filed an Amended Motion for Leave, stating that, in fact, Defendants had not consented. ECF No. 32 at 2. In Defendants' Response to Plaintiff's Motion, filed April 1, 2020, Defendants stated that Plaintiff did not provide them a copy of the Second Amended Complaint until it was filed with the Court, and Plaintiff did not comply with the "meet and confer" obligation set out in the Court's Order. ECF No. 34 at 1–2.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave" to parties to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). The Fourth Circuit has "interpreted Rule 15(a) to provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" *Id.* (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)); *see also Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012). Of relevance here, an amendment is futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510.

An amendment is also futile if it would fail to withstand a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *Perkins v. United States*, 55 F.3d 910, 917 (4th

Cir. 1995). To overcome a Rule 12(b)(6) motion, a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In evaluating the sufficiency of the plaintiff's claims, the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). The Court should not grant a motion to dismiss for failure to state a claim unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (citing *H.J. Inc. v. Northwestern Bell Tel. Co*., 492 U.S. 229, 249–50 (1989)).

If the plaintiff states a claim sounding in fraud, the plaintiff must meet a heightened pleading standard to survive a 12(b)(6) motion, stating "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires "that a plaintiff alleging fraud must make particular allegations of the time, place, speaker, and contents of the allegedly false acts or statements." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 249–50 (D. Md. 2000); *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (describing the "who, what, when, where, and how" of the fraud claim). Despite these heightened requirements, "a court should hesitate to dismiss if it finds (1) that the defendant[s] [have] been made aware of the particular circumstances for which [they] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Nat'l Mortg. Warehouse, LLC v. Trikeriotis*, 201 F. Supp. 2d 499, 505 (D. Md. 2002) (internal citations omitted).

### III.    DISCUSSION

This Court previously dismissed Plaintiff's First Amended Complaint because its claims were time-barred, Defendants were covered by the immunity conferred by the Communications Decency Act ("CDA"), 47 U.S.C. § 230, and Plaintiff had failed to allege the fraud-based claims with sufficient particularity. ECF No. 28. Plaintiff has now moved for leave to file a Second Amended Complaint, arguing it cures the defects of the dismissed Amended Complaint. ECF Nos. 30, 32.

#### A.  Statute of Limitations

The Court first considers whether Plaintiff's Second Amended Complaint cures the statute of limitations defect such that Plaintiff's claims are not time-barred on the face of the Complaint. As articulated in the Memorandum Opinion issued on February 26, 2020, ECF No. 28 at 9, Maryland law provides that "[a] civil action at law shall be filed within three years from the date it accrues," MD. CODE ANN., CTS. & JUD. PROC. § 5-101. "Generally, a claim accrues when the plaintiff suffers the actionable harm. The 'discovery rule' is an exception to this general rule, and operates to 'toll[] the accrual date of the action until such time as the potential plaintiff either discovers his or her injury, or should have discovered it through the exercise of due diligence.'" *Rounds v. Maryland-Nat'l Capital Park and Planning Comm'n*, 441 Md. 621, 654 (2015) (quoting *Poole v. Coakley & Williams Const., Inc.*, 423 Md. 91, 131 (2011)).

The Court previously found Plaintiff's fraud, breach of contract, and unjust enrichment claims accrued on August 31, 2013, at the latest, ECF No. 28 at 10, as on that date, Plaintiff sent an email to a number of recipients, including Defendant Guaranteed Bank Loans, stating that he had been "scammed/fleeced" and that there was "a very serious issue of theft and wire fraud that

needs appropriate attention by investigative authorities, in combination with legal action," ECF

No. 30-6 at 32. The email continued:

> If neither of the return of funds or agreed upon loan deposit of $2.5M happen on Tuesday, September 3, 2013, I would say that I must follow-through at your recommendation and dialogue with investigative U.S. Agencies. If you are for real, and I do not factually know, but I seriously doubt it at this point, you will work with me on resolution of this without pulling everyone else into this matter. If you are not, the answer is clear and I pursue measures otherwise. I must exhaust whatever means at my disposal to either collect, pursue law enforcement, or initiate suit.

*Id.*

In the Second Amended Complaint, Plaintiff includes facts indicating that he continued

to pay origination and administrative fees in hopes of acquiring monetary loans, even after this

email was sent. ECF No. 30-4 ¶ 38. Plaintiff therefore argues that "to the extent that Plaintiff's

claims involve transactions occurring on and after September 1, 2013," the August 31, 2013

email does not demonstrate that he discovered or should have discovered that those subsequent

transactions were fraudulent. ECF No. 30-2 at 5. Further, Plaintiff argues that, to the extent his

claims involve transactions occurring after September 26, 2015 (less than three years prior to

filing suit on September 26, 2018), those claims are not barred. *Id.*

Plaintiff's reference to transactions that occurred within the statute of limitations period

does not save his claims.[5] It is certainly unclear why Plaintiff continued to make payments after

the August 31, 2013 email, but it appears from the Second Amended Complaint that those

payments were made in relation to the same alleged fraud scheme referenced in that email.

Under Maryland law, the "continuing harm doctrine" tolls the statute of limitations in cases

---

[5] Moreover, although Plaintiff states in the Second Amended Complaint that the Contract Defendants "intentionally induced monies from Plaintiff Mr. Clarks throughout the time period of January 2013 through September 2016," ECF No. 30-4 ¶ 40, the only transactions identified that occurred after September 26, 2015 were certain payments to Defendant Organization 6, *id.* ¶ 38. Plaintiff alleges that he "paid monies unto Defendant Organization 6 in the total amount of $182,849.51 as purported origination and administrative fees in several installments from January 2015 through December 2015." *Id.*

where there are continuing violations regardless of the plaintiff's knowledge of the harm. *See Litz v. Md. Dep't of Env't*, 434 Md. 623, 646, 647 n.9 (2013). Assuming without deciding that the doctrine could apply to the category of claims asserted here, the Court must determine whether the additional payments constitute "new affirmative act[s]" or whether they are merely "continuing ill effect[s]" of an earlier tort. *Muffoletto v. Towers*, No. 1850, Sept. Term, 2017, 2019 WL 6840591, at *7 (Md. Ct. Spec. App. Dec. 16, 2019) (citing *Litz*, 434 Md. at 647). As one court noted in the context of a breach of contract claim:

> To apply the continuing harm doctrine, the breach itself -- rather than the damages -- must be continuing in nature. If the allegation "is more properly understood as the 'continuing effects of a single earlier act'" then the limitations period is not tolled.

*Mills v. Galyn Manor Homeowner's Ass'n, Inc.*, 239 Md. App. 663, 681 (2018), *aff'd sub nom. Andrews & Lawrence Prof'l Servs., LLC v. Mills*, 467 Md. 126 (2020) (quoting *Bacon v. Arey*, 203 Md. App. 606, 662 (2012)). *Mills* further cited with approval *Bey v. Shapiro Brown & Alt, LLP*, in which the court declined to apply the continuing harm doctrine in a federal debt collection case, holding that the "the limitations period for FDCPA claims commences from the date of the first violation, and subsequent violations of the same type do not restart the limitations period." 997 F. Supp. 2d 310, 316–17 (D. Md. 2014) (quoting *McGhee v. JP Morgan Chase Bank, N.A.*, No. DKC–12–3072, 2013 WL 4495797, at *7 n.10 (D. Md. Aug. 20, 2013)).

Although Plaintiff alleges certain payments or transactions occurred after September 26, 2015, Website Defendants' alleged wrongdoing—identified in the Court's prior Memorandum Opinion as their alleged provision of a list of "conmen" rather than legitimate lenders, their alleged misrepresentations regarding the lenders' legitimacy and receipt of a benefit from those misrepresentations at Plaintiff's expense in the form of the subscription fee, and their alleged involvement in the fraudulent preliminary payment scheme, ECF No. 28 at 10–11—occurred and

9

was discovered beforehand. The transactions that took place after September 26, 2015, certain payments to Defendant Organization 6, *id.* ¶ 38, do not reflect affirmative acts by Website Defendants constituting "discrete and separate violations," *Bey*, 997 F. Supp. 2d at 316, but instead "damages continu[ing] to flow from a single breach," *Mills*, 239 Md. App. at 683. Thus, even assuming it could apply to the claims asserted by Plaintiff, the continuing harm doctrine does not apply to the set of facts alleged in the Second Amended Complaint. The statute of limitations began to run on the date of discovery, August 31, 2013, at the latest, and subsequent injuries or "ill effects" of the alleged fraudulent scheme will not stop or restart the clock.

To the extent Plaintiff asserts that investigative measures he took after August 31, 2013, prove he did not uncover the fraud scheme itself until after September 26, 2015, *see* ECF No. 30-2 at 5; ECF No. 30-4 ¶ 74, those arguments are also unpersuasive. The additional efforts discussed in the Second Amended Complaint, which include engaging law enforcement and filing suit in Arizona, *see* ECF No. 30-4 ¶¶ 52–53; ECF No. 31 at 13–27, only confirm that Plaintiff was aware of the fraud in 2013 and 2014 and was using means other than litigation in this Court to investigate it further, not that he remained unaware. Indeed, he was sufficiently aware of the contours of the fraud scheme and the wrongdoing at issue to file the complaint in Arizona state court as well as a criminal complaint in Prince George's County more than three years prior to filing the Complaint in this case. ECF No. 31 at 13–27; ECF No. 30-6 at 25.

Finally, Plaintiff has not shown the statute of limitations was tolled due to Defendants' fraudulent concealment. As outlined in the Court's prior opinion, ECF No. 28 at 12, under Maryland law, "[i]f the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud." MD.

CODE ANN., CTS. & JUD. PROC. § 5- 203. "The aggrieved party asserting such fraud or concealment must plead affirmatively and with specificity the supporting facts in its complaint." *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 170 (2004) (citing *Doe v. Archdiocese of Washington*, 114 Md. App. 169, 186 (Md. Ct. Spec. App. 1997)). "The 'complaint relying on the fraudulent concealment doctrine must also contain specific allegations of how the fraud kept the plaintiff in ignorance of a cause of action, how the fraud was discovered, and why there was a delay in discovering the fraud, despite the plaintiff's diligence.'" *Id.* (quoting *Doe*, 114 Md. App. at 186).

In Plaintiff's Motion for Leave, he cites to several paragraphs in the Second Amended Complaint as "particularized allegations regarding such fraudulent concealment." ECF No. 30-2 at 5 (citing ECF No. 30-4 ¶¶ 8–14, 40–48, 75, 88, 94). However, with one exception, those allegations are unchanged from the First Amended Complaint, which the Court found did not show fraudulent concealment tolling the statute of limitations, ECF No. 28 at 12–13. The only new paragraph states: "The fact that Defendants employed multiple fictitious entities and misrepresented their coordination and complicity in the above-described scheme prevented Plaintiff Mr. Clarks from learning of the fraud/scam sooner, despite his efforts to uncover same." ECF No. 30-4 ¶ 75. This conclusory assertion does not cure the defects of the earlier version of the Complaint. Therefore, Plaintiff's claims remain time-barred, and the Motion for Leave to file the Second Amended Complaint will be denied as futile.

### B.  CDA Immunity

The Court nevertheless proceeds to consider whether the Second Amended Complaint cures the defects related to the CDA and the failure to plead fraud with sufficient particularity. First, the Second Amended Complaint does not include any additional or amended facts relevant

to Website Defendants' immunity under the CDA. Indeed, the paragraphs to which Plaintiff cites in his Motion for Leave to Amend as support for his arguments that the CDA does not render Defendants immune remain virtually unchanged from the First Amended Complaint. ECF No. 30-2 at 7–8 (citing ECF No. 30-4 ¶¶ 26–28, 29–34, 37, 72–73, 87; ECF No. 30-6 at 1–6). Plaintiff's additional arguments in the Motion for Leave concerning Defendants' immunity under the CDA are thus unavailing, as—without any additional or altered support in the Complaint itself—they amount only to a request for the Court to reconsider its earlier decision.

### C. Failure to State a Claim

The paragraphs in the Second Amended Complaint to which Plaintiff cites in his argument that he pleaded fraud with sufficient particularity are also largely unaltered. ECF No. 30-2 at 9–10 (citing ECF No. 30-4 ¶¶ 26–51, 62–68, 72–73, 88). While Plaintiff has provided additional facts concerning the dates and amounts of the payments he made to Contract Defendants, ECF No. 30-4 ¶ 38, and has attached spreadsheets detailing this information as exhibits to the Second Amended Complaint, ECF No. 30-6 at 7–23, these additional facts about the payments do not resolve the central problem identified in the Court's prior Memorandum Opinion: "the [Second] Amended Complaint includes only conclusory statements that Website Defendants were involved in the scheme and provides no factual enhancements actually connecting Website Defendants to the scheme." ECF No. 28 at 17. The additional facts do not relate to Website Defendants' involvement and thus do not provide Website Defendants ample notice "of the particular circumstances for which [they] will have to prepare a defense at trial," as required to state a claim of fraud. *Nat'l Mortg. Warehouse, LLC v. Trikeriotis*, 201 F. Supp. 2d 499, 505 (D. Md. 2002). Therefore, Plaintiff's failure to meet the pleading standard for fraud and

unjust enrichment claims outlined in Rule 9(b) provides an additional ground for denying Plaintiff's motion for leave.

Because Plaintiff did not allege new or amended facts correcting the defects identified in the Court's prior Memorandum Opinion, Plaintiff's Motion for Leave to File Second Amended Complaint is denied.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to File Second Amended Complaint, ECF No. 30, and Amended Plaintiff's Motion for Leave to File Second Amended Complaint, ECF No. 32, are denied. A separate Order shall issue.

Date: <u>January 7, 2021</u>                          <u>    /s/                                              </u>
                                                          GEORGE J. HAZEL
                                                          United States District Judge

13